UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
  GEORGE H. BUTCHER, III,                                    :
                                        Plaintiff,           :
                                                             :          17 Civ. 7988 (LGS)
                        -against-                            :
                                                             :          **OPINION AND ORDER**
  BRADLEY W. WENDT, et al.,                                  :
                                       Defendants. :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:12/21/2018__

LORNA G. SCHOFIELD, District Judge:

   Pro se Plaintiff George H. Butcher, III, brings this action against Bradley Wendt, Rick Fitzgerald, Michael Cassell and Judge Joseph Farneti, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and a conspiracy to violate Plaintiff's due process rights in violation of 42 U.S.C. § 1983.  Defendants move to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the following reasons, Defendants' motions are granted.

**I.    BACKGROUND**

   The following is a summary of relevant facts taken from the Second Amended Complaint, Plaintiff's opposition memorandum, other documents Plaintiff filed in opposition to the motions to dismiss (collectively, the "Complaint"), and documents referenced in the Complaint.  *See Coke v. Med., Dep't of Corr. & Cmty. Supervision*, No. 17 Civ. 0866, 2018 WL 2041388, at *1 n. 2 (S.D.N.Y. Apr. 30, 2018) ("[W]hen a *pro se* plaintiff's opposition memoranda raises new allegations that are 'consistent with the allegations' in the Complaint, these allegations may be read as 'supplements to th[e] pleadings.'") (some alteration in original); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (when deciding a motion to dismiss, courts may consider "facts stated on the face of the complaint, . . . documents appended

to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."). As these documents are voluminous, the reader is referred to Plaintiff's filings for a complete recitation. As required on a motion to dismiss, Plaintiff's allegations are accepted as true and construed in the light most favorable to Plaintiff. *See Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

### A.     Underlying Employment Actions

Plaintiff is the Chief Executive Officer and Chairman of the Board of Directors (the "Board") of the BondFactor Company, LLC ("BondFactor"). In April 2010 and May 2011 respectively, Defendants Wendt and Fitzgerald entered into employment agreements with BondFactor to serve as President and Managing Director, respectively, of the company.

### 1.     Wendt and Fitzgerald's Employment Agreements

Wendt's employment contract initially provided for a base compensation rate of $1.2 million, which accrued each year and vested when the company received a capital infusion of $10 million dollars. Until that point, he was entitled to a minimum salary of $28,000 per year. Even if previously accrued compensation vested, the Board retained the right to delay payment to Wendt if it would jeopardize the ability of BondFactor to continue as a going concern. In September 2012, Wendt's accrued base compensation vested because the company received a capital infusion of $10 million. However, the Board did not pay Wendt's vested compensation because it determined that to do so would jeopardize the ability of BondFactor to continue as a going concern.

Fitzgerald's contract provided for a base compensation rate of $250,000 that would vest if the company received a capital infusion of $20 million. Fitzgerald did not receive a minimum salary per year, but received reimbursements for his travel to New York.

Under the terms of their contracts, Wendt and Fitzgerald's right to accrued but unpaid compensation expired if the capital infusion targets were not met by a certain date (the "Expiry Date"). BondFactor extended the Expiry Date on Butcher and Wendt's contracts in May 2012, May 2013 and July 2013. In July 2013, BondFactor asked all employees to amend their employment agreements to extend certain benchmarks on which their compensation was contingent ("2013 Amendment"). In particular, the 2013 Amendment extended the Expiry Date on employee contracts and raised the capital infusion rate at which accrued compensation would vest to $500 million. Fitzgerald and Wendt signed the 2013 Amendment.

### 2.    Wendt and Fitzgerald's Allegedly Deceptive E-mail Communications

When joining the company, Fitzgerald gave up a minimum salary to be able to work remotely from Florida and receive reimbursements for his travel expenses to New York in lieu of minimum salary payments. Fitzgerald reaffirmed his commitment to this arrangement in October 2012. Despite this agreement, in August 2012, Fitzgerald sent e-mails to Butcher in which he asked for medical coverage and raised concerns about not being on BondFactor's payroll. In February 2013, he also complained about late reimbursements for travel. Fitzgerald sent these e-mails to Wendt allegedly to create a paper-trail of communications that he intended to use in a meritless lawsuit against BondFactor for compensation.

Wendt engaged in similar behavior. Wendt advocated for BondFactor to adopt the 2013 Amendment. However, regarding his personal contract, Wendt wanted the Expiry Date extension without raising the capital infusion target in his contract to $500 million. When Butcher refused Wendt's personal modification proposal, Wendt sent Butcher an e-mail (1) complaining about not receiving vested, unpaid compensation and (2) accusing Butcher of reneging on his promise to extend the Expiry Date on unpaid compensation automatically

without additional conditions.  These communications were allegedly intentionally deceptive and designed to support a meritless legal action.

### B.    Arbitration

Fitzgerald and Wendt submitted their employment claims to arbitration, including claims of labor law violations and breach of contract.  During these proceedings, Wendt allegedly colluded with Fitzgerald to give false testimony that Butcher coerced them into signing the 2013 Amendment.  On May 13, 2015, upon analyzing the terms of the parties' employment contracts, the arbitrator largely dismissed Fitzgerald and Wendt's claims.[1]  However, the arbitrator held that BondFactor had violated the Fair Labor Standards Act by not paying Fitzgerald a salary for his two and a half years of employment -- that is, by failing to pay him a predetermined amount of money on a regular basis -- as required by 29 C.F.R 541.602(a).  The arbitrator found Plaintiff, BondFactor and another Butcher entity jointly and severally liable to Fitzgerald for $76,578.45 in unpaid wages, an additional $76,578.45 in statutory liquidated damages, $3,302.86 for unreimbursed travel expenses (an amount conceded by Butcher in the arbitration), and attorneys' fees in an unspecified amount, for a total of $156,459.76 plus attorneys' fees to Fitzgerald.  The arbitrator dismissed Wendt's claims in their entirety (the "Arbitration Award").

### C.    State Court Proceeding

Wendt filed an action in the Supreme Court of Suffolk County pursuant to Article 75 of the New York Civil Practice Law and Rules, seeking to vacate or modify the Arbitration Award (the "Article 75 Proceeding") insofar as it dismissed his claims.  Cassell acted as Wendt's

---

[1] The descriptions of the arbitrator's decision in the text above, as well as Judge Farneti's decision in the text below, are based directly on those decisions, which are referenced in the Complaint.  Defendants filed the decisions in support of a prior motion to dismiss in this case.  Because the Complaint references the arbitration decision and Judge Farneti's decision, both can be considered when adjudicating the current motion to dismiss.  *See Goel*, 820 F.3d at 559.

4

attorney during the Article 75 Proceeding.  Judge Farneti held that the 2013 Amendment could not be interpreted to act as a waiver of Wendt's vested wages because to do so would violate New York public policy.  Judge Farneti vacated the Arbitration Award and remanded to the American Arbitration Association to determine Wendt's vested but unpaid wages.  Upon remand, the arbitrator entered judgment against Butcher for approximately $ 2.5 million.[2] Cassell and Wendt allegedly made numerous false statements in their court filings during the Article 75 Proceeding and bribed Judge Farneti to induce him to rule in their favor.

### D.    Dodd-Frank Proceeding

In October 2016, Wendt and Fitzgerald filed a federal action bringing a securities law retaliation claim against Butcher under the Dodd-Frank Act.  The action was dismissed with prejudice on August 2, 2017, based on the doctrine of *res judicata* because the claims could have been raised in the arbitration.  *Wendt v. BondFactor Co. LLC*, No. 16 Civ. 7751, 2017 WL 3309733, at *7 (S.D.N.Y. Aug. 2, 2017).  Wendt and Fitzgerald allegedly committed wire fraud by sending false e-mails for the purpose of manufacturing a basis for the Dodd-Frank action.

### E.    United Sports Equities

From 2005 to 2010, Wendt was the Chief Executive Officer or "Managing Member" of United Sports Equities, LLC ("United Sports Equities").  During that period, Wendt allegedly made false accusations that employees at United Sports Equities engaged in criminal conduct.

---

[2] Judge Farneti's decision was appealed to the Appellate Division, Second Department, and the appeal was still pending as of November 14, 2017.

During 2006 and 2007, Wendt directed an employee to send false financial statements by e-mail in an attempt misrepresent the financial situation of the company.

F.      **Summary of RICO Claims**

Based on these allegations, the Complaint asserts three causes of action -- two RICO claims under 18 U.S.C. §§ 1962(b) and (c) and a civil rights claim under 42 U.S.C. § 1983. These claims arise from two sets of facts.  The first concerns Fitzgerald and Wendt's efforts to recover compensation allegedly due from Plaintiff and his company.  The second concerns United Sports Equities.

Specifically, the Complaint alleges that Fitzgerald, Wendt, Cassel and Farneti engaged in a RICO conspiracy to defraud Plaintiff, BondFactor and others by sending deceptive e-mails to further their schemes, specifically (a) Fitzgerald and Wendt's scheme to feign dissatisfaction with their compensation and make meritless claims in an arbitration proceeding for unpaid compensation and a Dodd-Frank proceeding for securities law violations, and (b) Wendt, Cassell and Farneti's scheme involving bribery and manipulation of the outcome of the Article 75 Proceeding in which Wendt challenged the outcome of the arbitration proceeding.  Cassell, Wendt's lawyer, allegedly furthered the conspiracy by making false statements in his arguments on behalf of Wendt during the Article 75 Proceeding.  Judge Farneti, who presided over the Article 75 Proceeding, allegedly furthered the conspiracy by accepting a bribe from Wendt and Cassell in exchange for ruling in Wendt's favor.  The § 1983 claim against Fitzgerald, Wendt and Cassell is similarly based on a "violation of Plaintiff's constitutional rights as a result of judicial corruption" in the Article 75 Proceeding.

The Complaint also alleges that Wendt engaged in racketeering activity in the course of his ownership and control of United Sports Equities, including by sending false financial

statements by e-mail with the purpose of misrepresenting the financial circumstances of that company.  The victims of this alleged scheme "included investors, employees and creditors of United Sports [Equities] and its subsidiaries and affiliates . . . ."

## II.   STANDARD

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest."  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted).

### A.   Rule 12(b)(1)

 "'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *John Brady v. Int'l Bhd. of Teamsters, Theatrical Drivers & Helpers Local 817*, 741 F.3d 387, 389 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In deciding motions to dismiss under Rule 12(b)(1), a court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (internal quotation marks omitted).

### B.   Rule 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing

*Twombly*, 550 U.S. at 556).  It is not enough for a plaintiff to allege facts that are consistent with

liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon

which his claim rests through factual allegations sufficient 'to raise a right to relief above the

speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555).  On a Rule 12(b)(6) motion, "all factual allegations in the

complaint are accepted as true and all inferences are drawn in the plaintiff's favor."  *Apotex Inc.

v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   RICO Claims

#### 1.   Rooker-Feldman Doctrine and Claims Regarding Wendt's Compensation

The Rooker-Feldman doctrine bars this Court from exercising jurisdiction over Plaintiff's

claims against Wendt, Cassell and Judge Farneti relating to Wendt's compensation as determined

by Judge Farneti in the Article 75 Proceeding.

The Rooker-Feldman doctrine bars the federal courts from exercising jurisdiction over

claims "brought by state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting district court review and

rejection of those judgments."  *Sung Cho v. City of New York*, --- F.3d ---, No. 18 Civ. 337, 2018

WL 6494521, at *4 (2d Cir. Dec. 11, 2018) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus.

Corp.*, 544 U.S. 280, 284 (2005)).  The doctrine frequently has been applied to cases, like this

one, against state court judges or asserting error in state court proceedings.  *Id.*

To satisfy the requirements of the Rooker-Feldman doctrine, the following requirements

must be met:

> (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Id.* For the second element, causation occurs if the injuries are "produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* at *5 (internal quotation marks omitted).

The procedural aspects -- the first and fourth elements -- of the Rooker-Feldman doctrine are met here. Plaintiff lost in state court, and the judgment was rendered before the district court proceedings commenced.

The second element is satisfied because Plaintiff's alleged injuries regarding Wendt's compensation were caused by the state court judgment. The Complaint alleges that Plaintiff's injuries result from (1) expenses that resulted from the fraud Judge Farneti perpetrated in presiding over the Article 75 Proceeding challenging the arbitration; (2) the judgment imposed by Judge Farneti granting $2.5 million to Wendt; and (3) other expenses and damages borne by Plaintiff in connection with Defendants' schemes. Although Plaintiff couches his claims in terms of civil RICO violations, the only concrete injuries the Complaint alleges result from Judge Farneti's decision to award Wendt unpaid wages and Plaintiff's costs associated with defending the Article 75 Proceeding. These injuries stem directly from Wendt and his attorney Cassell's successful appeal of the Arbitration Award in state court. The present action is a de facto attempt to challenge that state court decision. *See e.g.*, *Fraccola v. Grow*, 670 F. App'x 34, 35 (2d Cir. 2016) (summary order) (holding that Rooker-Feldman doctrine applied when the plaintiff lost in state court, alleged "injuries directly caused" by the state court's order and sought to overturn the state court order); *Chery v. Nationstar Mortg. LLC*, No. 18 Civ. 1240, 2018 WL

9

3708664, at *3 (S.D.N.Y. Aug. 2, 2018) (although the plaintiff alleged civil RICO violations stemming from "mortgage fraud," the Rooker-Feldman doctrine applied because the only injury she alleged was foreclosure on property, which stemmed directly from the state court action). The Complaint alleges that Plaintiff incurred "other expenses" that arose from Defendants' fraudulent conduct, but this allegation is too vague to plausibly allege -- or prove by a preponderance of the evidence as required on a Rule 12(b)(1) motion -- that Plaintiff suffered injuries that are independent of the state court judgment.

The third element of the Rooker-Feldman doctrine is also satisfied; because Plaintiff's alleged injuries arise from the state court judgment, "[r]edressing [Plaintiff's] claimed injuries would require the federal court to review and reject the state court judgment."  *See Charles v. Levitt*, 716 F. App'x 18, 22 (2d Cir. 2017) (summary order).  Thirty-seven paragraphs of the Complaint, under the heading "The Farneti Order Was Manifestly Corrupt in Multiple Respects" are dedicated to describing flaws in the state court's order.  *See Charles v. Levitt*, No. 15 Civ. 9334, 2016 WL 3982514, at *4 (S.D.N.Y. July 21, 2016) (holding that Rooker-Feldman doctrine applies when the plaintiff's "theory of entitlement to relief is entirely grounded on the claim that the state court judgment and the affidavit on which it was based were fraudulently procured"). Assessing the merits of Plaintiff's claim necessarily entails reviewing the reasoning behind the state court judgment.

The RICO claims, as they relate to Wendt's compensation, are dismissed for lack of subject matter jurisdiction based on the Rooker-Feldman doctrine.

## 2.  The RICO Claims Regarding Fitzgerald's Compensation

Plaintiff's RICO claims related to Fitzgerald's compensation are dismissed because the Complaint fails to allege facts that show a causal connection between the substantive RICO

violation (wire fraud) and Plaintiff's injury -- (1) the Arbitration Award against Plaintiff on account of Fitzgerald's unpaid wages and (2) expenses borne as a consequence of that award. "'To establish a RICO claim, a plaintiff must allege: (1) [a substantive RICO violation under] 18 U.S.C. § 1692 [(a predicate act)]; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)).

　　　"To sue under RICO, a plaintiff must . . . establish that the underlying § 1962 RICO violation was the proximate cause of his injury.  This means that there must be some direct relation between the injury asserted and the injurious conduct alleged." *Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 140 (2d Cir. 2018) (internal quotation marks and citation omitted).

　　　Plaintiff's RICO claims as to Fitzgerald fail because he has not alleged that Fitzgerald's wire fraud (the deceptive statements Fitzgerald made in his e-mails regarding his compensation) was the proximate cause of the injury (the Arbitration Award).  The Complaint alleges that Fitzgerald perpetrated a RICO violation by committing wire fraud -- in particular, that Fitzgerald sent deceptive e-mails inquiring about medical coverage, complaining about unpaid reimbursements for travel and expressing dissatisfaction about his lack of salary even though he consented to the no-salary arrangement.  The Complaint also alleges that this wire fraud resulted in an arbitration award that required Plaintiff to pay back wages and attorneys' fees to Fitzgerald. However, the arbitrator's decision did not depend on Fitzgerald's allegedly fraudulent e-mail communications nor a determination of whether Fitzgerald had consented to the salary arrangement.  The arbitrator reasoned that "an employee cannot waive his or her right to statutory wages" and relied on this legal principle and the undisputed fact that Fitzgerald had

11

been paid only certain expense reimbursements to award Fitzgerald back pay.  (Dkt. 7-2 page 13 of 29.)  Even absent Fitzgerald's e-mails, the arbitrator would have awarded Fitzgerald back pay resulting in Plaintiff's injury.  As the predicate RICO violation (wire fraud) was not the proximate cause of the injury (the adverse Arbitration Award), Plaintiff's RICO claims based on Fitzgerald's compensation related wire fraud are dismissed.

The Complaint also alleges that Wendt and Fitzgerald committed a RICO violation by sending e-mails that falsely accused Butcher of breaking securities laws and relying on these statements to bring a Dodd-Frank retaliation lawsuit.  However, the Dodd-Frank action was dismissed based on the doctrine of *res judicata,* and the decision did not reach the merits of Wendt and Fitzgerald's claim or their allegedly fraudulent communications.  *See Wendt*, 2017 WL 3309733, at *7.  For this reason, Wendt and Fitzgerald's fraudulent communications related to securities violations were not a proximate cause of Plaintiff's RICO injury, and Plaintiff's RICO claims arising out of those communications are dismissed.

### 3.  The RICO Claims Regarding United Sports Equities

The Complaint's allegations regarding United Sports Equities are insufficient to allege Article III standing because there are no allegations that Plaintiff was injured by Wendt's alleged fraud in connection with United Sports Equities.  *See Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41, 58 (2d Cir. 2018) ("Article III standing requires a plaintiff to have suffered an 'injury in fact' that is 'fairly traceable' to the defendant's challenged conduct and that is 'likely to be redressed by a favorable decision.'").  The Complaint expressly alleges that victims of this alleged scheme "included investors, employees and creditors of United Sports

[Equities] and its subsidiaries and affiliates . . . ."  The RICO claims relating to United Sports Equities are dismissed.

### B.      Conspiracy to Violate Due Process

The Complaint asserts a claim under 42 USC § 1983 alleging that Defendants Wendt, Cassell and Fitzgerald conspired to violate Plaintiff's due process rights by paying Judge Farneti a bribe in exchange for a favorable decision in the Article 75 Proceeding.  The § 1983 claim fails because the Complaint does not plausibly allege any such agreement.  To plead a sufficient § 1983 claim a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002); *accord Hutchins v. Solomon*, No. 16 Civ. 10029, 2018 WL 4757970, at *25 (S.D.N.Y. Sept. 29, 2018).  Conclusory or implausible allegations of state involvement are insufficient to state a § 1983 conspiracy claim.  *See Betts v. Shearman*, 751 F.3d 78, 84 n. 1 (2d Cir. 2014).

The Complaint makes only a vague and speculative allegation that a bribe was promised and paid to Farneti.

> Given the planning, effort and timeframe associated with Farneti's manipulation of the [Article 75 Proceeding], even if he perceived his actions as effectively riskless, common sense should lead a finder of fact to conclude that Farneti received or was promised a substantial benefit in exchange for his agreement to manipulate and his actions in manipulating such outcome.

The Complaint alleges no facts about the alleged agreement to pay any such bribe -- including why these three defendants, and not any combination of two or even a single one of them was responsible for the bribe, assuming one was paid; nor does the Complaint allege any details about the nature of the agreement or how its goal was meant to be achieved.  *See Hutchins*, 2018 WL 4757970, at *26 ("Plaintiff does not allege when or how any of the Defendants agreed to

violate Plaintiff's rights, what the scope of the agreement was, or any other detail regarding the alleged agreement."); *Mackin v. Auberger*, 59 F. Supp. 3d 528, 554 (W.D.N.Y. 2014) (a complaint alleging RICO violations and bribery did not meet *Twombly*'s plausibility standard when the plaintiff did not "allege even a single communication between Defendants and Alliance that would support a reasonable inference of an illicit agreement"). The only support Plaintiff offers in support of his bribery allegation is that Judge Farneti issued a decision unfavorable to him based on erroneous reasoning.[3] Plaintiff's naked allegations of bribery do not raise his § 1983 claim "above the speculative level." *See Twombly*, 550 U.S. at 555.

As the Complaint does not plausibly allege that Fitzgerald, Cassell and Wendt acted in concert with Farneti to deprive Plaintiff of his due process rights, Plaintiff's § 1983 claim is dismissed.

### C.   Leave to Replead

Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals

---

[3] In particular, Plaintiff alleges that Judge Farneti refused to dismiss the petition to confirm the Arbitration Award for untimeliness; he interpreted Wendt's contract in an implausible manner; and he vacated the arbitrator's award despite the high level of deference given to the arbitrator's decision.

how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

The Court believes that any effort to replead would be futile.  If Plaintiff believes otherwise, he may file a letter application (by filing it with the Pro Se Intake Office) on or before January 21, 2019, not to exceed three, single-spaced pages, describing how he would amend the Complaint to remedy the deficiencies identified in this Opinion.

IV.   **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 35, 37 and 38, and mail a copy of this Opinion and Order to pro se Plaintiff.  If Plaintiff seeks to file a third amended complaint, he shall file a letter application as described above on or before January 21, 2019.

Dated: December 21, 2018
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**